OUBRE *v.* ENTERGY OPERATIONS, INC.

No. 96–1291. Argued November 12, 1997—Decided January 26, 1998

KENNEDY, J., delivered the opinion of the Court, in which STEVENS, O'CONNOR, SOUTER, GINSBURG, and BREYER, JJ., joined. BREYER, J., filed a concurring opinion, in which O'CONNOR, J., joined, *post*, p. 430. SCALIA, J., filed a dissenting opinion, *post*, p. 434.' THOMAS, J., filed a dissenting opinion, in which REHNQUIST, C. J., joined, *post*, p. 434.

*Barbara G. Haynie* argued the cause for petitioner. With her on the briefs were *W. Richard House, Jr.,* and *John S. Lawrence, Jr.*

*Beth S. Brinkmann* argued the cause for the United States et al. urging reversal. With her on the brief were *Acting Solicitor General Dellinger, Deputy Solicitor General Waxman, J. Ray Terry, Jr., Gwendolyn Young Reams,* and *Carolyn L. Wheeler.*

*Carter G. Phillips* argued the cause for respondent. With him on the brief were *Michael G. Thompson, O. H. Storey III, Renee W. Masinter,* and *Rosemarie Falcone.**

JUSTICE KENNEDY delivered the opinion of the Court. ·

An employee, as part of a termination agreement, signed a release of all claims against her-employer. In consider-

---

*Briefs of *amici curiae* urging reversal were filed for the American Association of Retired Persons by *Cathy Ventrell-Monsees* and *Thomas Osborne;* and for the National Employment Lawyers Association by *Thomas R. Meites.*

Briefs of *amici curiae* urging affirmance were filed for the Equal Employment Advisory Council et al. by *Ann Elizabeth Reesman, Stephen A. Bokat, Robin S. Conrad, Edward H. Comer, J. Bruce Brown,* and *Edward N. Bomsey;* and for the Illinois State Chamber of Commerce by *Brian W. Bulger.*

ation, she received severance pay in installments. The release, however, did not comply with specific federal statutory requirements for a release of claims under the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, 29 U. S. C. § 621 *et seq.* After receiving the last payment, the employee brought suit under the ADEA. The employer claims the employee ratified and validated the nonconforming release by retaining the moneys paid to secure it. The employer also insists the release bars the action unless, as a precondition to filing suit, the employee tenders back the moneys received. We disagree and rule that, as the release did not comply with the statute, it cannot bar the ADEA claim.

I

Petitioner Dolores Oubre worked as a scheduler at a power plant in Killona, Louisiana, run by her employer, respondent Entergy Operations, Inc. In 1994, she received a poor performance rating. Oubre's supervisor met with her on January 17, 1995, and gave her the option of either improving her performance during the coming year or accepting a voluntary arrangement for her severance. She received a packet of information about the severance agreement and had 14 days to consider her options, during which she consulted with attorneys. On January 31, Oubre decided to accept. She signed a release, in which she "agree[d] to waive, settle, release, and discharge any and all claims, demands, damages, actions, or causes of action . . . that I may have against Entergy . . . ." App. 61. In exchange, she received six installment payments over the next four months, totaling $6,258.

The Older Workers Benefit Protection Act (OWBPA) imposes specific requirements for releases covering ADEA claims. OWBPA, § 201, 104 Stat. 983, 29 U. S. C. §§ 626(f)(1) (B), (F), (G). In procuring the release, Entergy did not comply with the OWBPA in at least three respects: (1) Entergy did not give Oubre enough time to consider her options. (2) Entergy did not give Oubre seven days after she signed

the release to change her mind. And (3) the release made no specific reference to claims under the ADEA.

Oubre filed a charge of age discrimination with the Equal Employment Opportunity Commission, which dismissed her charge on the merits but issued a right-to-sue letter. She filed this suit against Entergy in the United States District Court for the Eastern District of Louisiana, alleging constructive discharge on the basis of her age in violation of the ADEA and state law. Oubre has not offered or tried to return the $6,258 to Entergy, nor is it clear she has the means to do so. Entergy moved for summary judgment, claiming Oubre had ratified the defective release by failing to return or offer to return the moneys she had received. The District Court agreed and entered summary judgment for Entergy. The Court of Appeals affirmed, 112 F. 3d 787 (CA5 1996) *(per curiam)*, and we granted certiorari, 520 U. S. 1185 (1997).

## II

The employer rests its case upon general principles of state contract jurisprudence. As the employer recites the rule, contracts tainted by mistake, duress, or even fraud are voidable at the option of the innocent party. See 1 Restatement (Second) of Contracts § 7, and Comment *b* (1979); *e. g., Ellerin* v. *Fairfax Sav. Assn.*, 78 Md. App. 92, 108–109, 552 A. 2d 918, 926–927 (Md. Spec. App.), cert. denied, 316 Md. 210, 557 A. 2d 1336 (1989). The employer maintains, however, that before the innocent party can elect avoidance, she must first tender back any benefits received under the contract. See, *e. g., Dreiling* v. *Home State Life Ins. Co.*, 213 Kan. 137, 147–148, 515 P. 2d 757, 766–767 (1973). If she fails to do so within a reasonable time after learning of her rights, the employer contends, she ratifies the contract and so makes it binding. 1 Restatement (Second) of Contracts, *supra*, § 7, Comments *d*, *e*; see, *e. g., Jobe* v. *Texas Util. Elec. Co.*, No. 05–94–01368–CV, 1995 WL 479645, *3 (Tex. App.-Dallas, Aug. 14, 1995) (unpublished). The employer also invokes the

doctrine of equitable estoppel. As a rule, equitable estoppel bars a party from shirking the burdens of a voidable transaction for as long as she retains the benefits received under it. See, *e. g., Buffum* v. *Peter Barceloux Co.,* 289 U. S. 227, 234 (1933) (citing state case law from Indiana and New York). Applying these principles, the employer claims the employee ratified the ineffective release (or faces estoppel) by retaining all the sums paid in consideration of it. The employer, then, relies not upon the execution of the release but upon a later, distinct ratification of its terms.

These general rules may not be as unified as the employer asserts. See generally Annot., 76 A. L. R. 344 (1932) (collecting cases supporting and contradicting these rules); Annot., 134 A. L. R. 6 (1941) (same). And in equity, a person suing to rescind a contract, as a rule, is not required to restore the consideration at the very outset of the litigation. See 3 Restatement (Second) of Contracts, *supra,* § 384, and Comment *b;* Restatement of Restitution § 65, Comment *d* (1936); D. Dobbs, Law of Remedies § 4.8, p. 294 (1973). Even if the employer's statement of the general rule requiring tender back before one files suit were correct, it would be unavailing. The rule cited is based simply on the course of negotiation of the parties and the alleged later ratification. The authorities cited do not consider the question raised by statutory standards for releases and a statutory declaration making nonconforming releases ineffective. It is the latter question we confront here.

In 1990, Congress amended the ADEA by passing the OWBPA. The OWBPA provides: "An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary. . . . [A] waiver may not be considered knowing and voluntary unless at a minimum" it satisfies certain enumerated requirements, including the three listed above. 29 U. S. C. § 626(f)(1).

The statutory command is clear: An employee "may not waive" an ADEA claim unless the waiver or release satisfies

the OWBPA's requirements. The policy of the OWBPA is likewise clear from its title: It is designed to protect the rights and benefits of older workers. The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers, and we are bound to take Congress at its word. Congress imposed specific duties on employers who seek releases of certain claims created by statute. Congress delineated these duties with precision and without qualification: An employee "may not waive" an ADEA claim unless the employer complies with the statute. Courts cannot with ease presume ratification of that which Congress forbids.

The OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law. The statute creates a series of prerequisites for knowing and voluntary waivers and imposes affirmative duties of disclosure and waiting periods. The OWBPA governs the effect under federal law of waivers or releases on ADEA claims and incorporates no exceptions or qualifications. The text of the OWBPA forecloses the employer's defense, notwithstanding how general contract principles would apply to non-ADEA claims.

The rule proposed by the employer would frustrate the statute's practical operation as well as its formal command. In many instances a discharged employee likely will have spent the moneys received and will lack the means to tender their return. These realities might tempt employers to risk noncompliance with the OWBPA's waiver provisions, knowing it will be difficult to repay the moneys and relying on ratification. We ought not to open the door to an evasion of the statute by this device.

Oubre's cause of action arises under the ADEA, and the release can have no effect on her ADEA claim unless it complies with the OWBPA. In this case, both sides concede the release the employee signed did not comply with the requirements of the OWBPA. Since Oubre's release did not comply

with the OWBPA's stringent safeguards, it is unenforceable against her insofar as it purports to waive or release her ADEA claim. As a statutory matter, the release cannot bar her ADEA suit, irrespective of the validity of the contract as to other claims.

In further proceedings in this or other cases, courts may need to inquire whether the employer has claims for restitution, recoupment, or setoff against the employee, and these questions may be complex where a release is effective as to some claims but not as to ADEA claims. We need not decide those issues here, however. It suffices to hold that the release cannot bar the ADEA claim because it does not conform to the statute. Nor did the employee's mere retention of moneys amount to a ratification equivalent to a valid release of her ADEA claims, since the retention did not comply with the OWBPA any more than the original release did. The statute governs the effect of the release on ADEA claims, and the employer cannot invoke the employee's failure to tender back as a way of excusing its own failure to comply.

We reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

## APPENDIX TO OPINION OF THE COURT

Older Workers Benefit Protection Act, §201, 104 Stat. 983, 29 U. S. C. §626(f):

(f) Waiver

(1) An individual may not waive any right or claim under this Act unless the waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless 'at a minimum—

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calcu-

lated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this Act;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or

(ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—

(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

(2) A waiver in settlement of a charge filed with the Equal Employment Opportunity Commission, or an action filed in court by the individual or the individual's representative, alleging age discrimination of a kind prohibited under section 4 or 15 may not be considered knowing and voluntary unless at a minimum—

(A) subparagraphs (A) through (E) of paragraph (1) have been met; and

(B) the individual is given a reasonable period of time within which to consider the settlement agreement.

(3) In any dispute that may arise over whether any of the requirements, conditions, and circumstances set forth in subparagraph (A), (B), (C), (D), (E), (F), (G), or (H) of paragraph (1), or subparagraph (A) or (B) of paragraph (2), have been met, the party asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary pursuant to paragraph (1) or (2).

(4) No waiver agreement may affect the Commission's rights and responsibilities to enforce this Act. No waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the Commission.

JUSTICE BREYER, with whom JUSTICE O'CONNOR joins, concurring.

This case focuses upon a worker who received a payment from her employer and in return promised not to bring an age-discrimination suit. Her promise failed the procedural tests of validity set forth in the Older Workers Benefit Protection Act (OWBPA), 29 U. S. C. § 626(f)(1). I agree with the majority that, because of this procedural failing, the worker is free to bring her age-discrimination suit without "tendering back" her employer's payment as a precondition. As a conceptual matter, a "tender back" requirement would imply that the worker had ratified her promise by keeping

her employer's payment. For that reason, it would bar suit, including suit by a worker (without other assets) who had already spent the money he received for the promise. Yet such an act of ratification could embody some of the same procedural failings that led Congress to find the promise not to sue itself invalid. For these reasons, as the majority points out, a tender back precondition requirement would run contrary to Congress' statutory command. See *ante*, at 426–427. Cf. 1 Restatement (Second) of Contracts § 85, Comment *b* (1979) (a promise ratifying a voidable contract "may itself be voidable for the same reason as the original promise, or it may be voidable or unenforceable for some other reason"); D. Dobbs, Law of Remedies 982 (1973) ("[C]ourts must avoid allowing a recovery that has the effect of substantially enforcing the contract that has been declared unenforceable, since to do so would defeat the policy that led to the . . . rule in the first place").

I write these additional words because I believe it important to specify that the statute need not, and does not, thereby make the worker's procedurally invalid promise totally void, *i. e.*, without any legal effect, say, like a contract the terms of which themselves are contrary to public policy. See 1 Restatement (Second) of Contracts § 7, Comment *a* (1979); 2 *id.*, § 178. Rather, the statute makes the contract that the employer and worker tried to create voidable, like a contract made with an infant, or a contract created through fraud, mistake, or duress, which contract the worker may elect either to avoid or to ratify. See 1 *id.*, § 7, and Comment *b*.

To determine whether a contract is voidable or void, courts typically ask whether the contract has been made under conditions that would justify giving one of the parties a choice as to validity, making it voidable, *e. g.*, a contract with an infant; or whether enforcement of the contract would violate the law or public policy irrespective of the conditions in which the contract was formed, making it void, *e. g.*, a con-

tract to commit murder.   Compare 1 *id.*, § 7, Comment *b* (voidable), with 2 *id.*, § 178, and Comment *d* (void).   The statute before us reflects concern about the conditions (of knowledge and free choice) surrounding the making of a contract to waive an age-discrimination claim.   It does not reflect any relevant concern about enforcing the contract's substantive terms.   Nor does this statute, unlike the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U. S. C. § 51 *et seq.*, say that a contract waiving suit and thereby avoiding liability is void.   § 55.   Rather, as the majority's opinion makes clear, see *ante,* at 426–427, the OWBPA prohibits courts from finding ratification in certain circumstances, such as those presented here, namely, a worker's retention of an employer's payment for an invalid release.   That fact may affect ratification, but it need not make the contract void, rather than voidable.

That the contract is voidable rather than void may prove important.   For example, an absolutely void contract, it is said, "is void as to everybody whose rights would be affected by it if valid."   17A Am. Jur. 2d, Contracts § 7, p. 31 (1991). Were a former worker's procedurally invalid promise not to sue absolutely void, might it not become legally possible for an employer to decide to cancel its own reciprocal obligation, say, to pay the worker, or to provide ongoing health benefits—whether or not the worker in question ever intended to bring a lawsuit?   It seems most unlikely that Congress, enacting a statute meant to protect workers, would have wanted to create—as a result of an employer's failure to follow the law—any such legal threat to all workers, whether or not they intend to bring suit.   To find the contract voidable, rather than void, would offer legal protection against such threats.

At the same time, treating the contract as voidable could permit an employer to recover his own reciprocal payment (or to avoid his reciprocal promise) where doing so seems

most fair, namely, where that recovery would *not* bar the worker from bringing suit. Once the worker (who has made the procedurally invalid promise not to sue) brings an age-discrimination suit, he has clearly rejected (avoided) his promise not to sue. As long as there is no "tender back" precondition, his (invalid) promise will not have barred his suit in conflict with the statute. Once he has sued, however, nothing in the statute prevents his employer from asking for restitution of his reciprocal payment or relief from any ongoing reciprocal obligation. See Restatement of Restitution § 47, Comment *b* (1936) ("A person who transfers something to another believing that the other thereby comes under a duty to perform the terms of a contract . . . is ordinarily entitled to restitution for what he has given if the obligation intended does not arise and if the other does not perform"); Dobbs, *supra,* at 994 (restitution is often allowed where benefits are conferred under voidable contract). A number of older state cases indicate, for example, that the amount of consideration paid for an invalid release can be deducted from a successful plaintiff's damages award. See, *e. g., St. Louis-San Francisco R. Co.* v. *Cox,* 171 Ark. 103, 113–115, 283 S. W. 31, 35 (1926) (amount paid for invalid release may be taken into consideration in setting remedy); *Koshka* v. *Missouri Pac. R. Co.,* 114 Kan. 126, 129–130, 217 P. 293, 295 (1923) (the sum paid for an invalid release may be treated as an item of credit against damages); *Miller* v. *Spokane Int'l R. Co.,* 82 Wash. 170, 177–178, 143 P. 981, 984 (1914) (same); *Gilmore* v. *Western Elec. Co.,* 42 N. D. 206, 211–212, 172 N. W. 111, 113 (1919).

My point is that the statute's provisions are consistent with viewing an invalid release as voidable, rather than void. Apparently, five or more Justices take this view of the matter. See *post,* at 436, n. 1 (THOMAS, J., dissenting). As I understand the majority's opinion, it is also consistent with this view, and I consequently concur in its opinion.

434

JUSTICE SCALIA, dissenting.

I agree with JUSTICE THOMAS that the Older Workers Benefit Protection Act (OWBPA), 29 U. S. C. § 626(f), does not abrogate the common-law doctrines of "tender back" and ratification. Because no "tender back" was made here, I would affirm the judgment.

I do not consider ratification a second basis for affirmance, since ratification cannot occur until the impediment to the conclusion of the agreement is eliminated. Thus, an infant cannot ratify his voidable contracts until he reaches majority, and a party who has contracted under duress cannot ratify until the duress is removed. See 1 E. Farnsworth, Contracts § 4.4, p. 381, § 4.19, p. 443 (1990). Of course for some contractual impediments, discovery itself is the cure. See 12 W. Jaeger, Williston on Contracts § 1527, p. 626 (3d ed. 1970) (ratification by a defrauded party may occur "after discovery of the fraud"); 2 Farnsworth, *supra,* § 9.3, at 520 (ratification by party entitled to avoid for mistake may occur after "that party is or ought to be aware of the facts"). The impediment here is not of that sort. OWBPA provides that "[a]n individual may not waive any right or claim under th[e] [Age Discrimination in Employment Act of 1967] unless the waiver is knowing and voluntary," 29 U. S. C. § 626(f)(1), and says that a waiver "may not be considered knowing and voluntary" unless it satisfies the requirements not complied with here, *ibid.* That a party later learns that those requirements were not complied with no more enables ratification of the waiver than does such knowledge at the time of contracting render the waiver effective *ab initio.*

JUSTICE THOMAS, with whom THE CHIEF JUSTICE joins, dissenting.

The Older Workers Benefit Protection Act (OWBPA), 29 U. S. C. § 626(f), imposes certain minimum requirements that waivers of claims under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U. S. C. § 621 *et seq.,* must meet

in order to be considered "knowing and voluntary." The Court of Appeals held that petitioner had ratified a release of ADEA claims that did not comply with the OWBPA by retaining the benefits she had received in exchange for the release, even after she had become aware of the defect and had decided to sue respondent. The majority does not suggest that the Court of Appeals was incorrect in concluding that petitioner's conduct was sufficient to constitute ratification of the release. Instead, without so much as acknowledging the long-established principle that a statute "must 'speak directly' to the question addressed by the common law" in order to abrogate it, *United States* v. *Texas*, 507 U. S. 529, 534 (1993) (quoting *Mobil Oil Corp.* v. *Higginbotham*, 436 U. S. 618, 625 (1978)), the Court holds that the OWBPA abrogates both the common-law doctrine of ratification and the doctrine that a party must "tender back" consideration received under a release of legal claims before bringing suit. Because the OWBPA does not address either of these common-law doctrines at all, much less with the clarity necessary to abrogate them, I respectfully dissent.

It has long been established that " '[s]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.' " *United States* v. *Texas, supra,* at 534 (quoting *Isbrandtsen Co.* v. *Johnson*, 343 U. S. 779, 783 (1952)). Congress is understood to legislate against a background of common-law principles, *Astoria Fed. Sav. & Loan Assn.* v. *Solimino*, 501 U. S. 104, 108 (1991), and thus "does not write upon a clean slate," *United States* v. *Texas, supra,* at 534. As a result, common-law doctrines " 'ought not to be deemed to be repealed, unless the language of a statute be clear and explicit for this purpose.' " *Norfolk Redevelopment and Housing Authority* v. *Chesapeake & Potomac Telephone Co. of Va.*, 464 U. S. 30, 35–36 (1983) (quoting *Fairfax's Devisee* v. *Hunter's Lessee*, 7 Cranch 603, 623 (1813)).

The only clear and explicit purpose of the OWBPA is to define "knowing and voluntary" in the context of ADEA waivers. Prior to the statute's enactment, the Courts of Appeals had disagreed about the proper standard for determining whether such waivers were knowing and voluntary. Several courts had adopted a "totality of the circumstances" test as a matter of federal waiver law, see, *e. g., Cirillo* v. *Arco Chemical Co.*, 862 F. 2d 448, 451 (CA3 1988); *Bormann* v. *AT&T Communications, Inc.*, 875 F. 2d 399, 403 (CA2), cert. denied, 493 U. S. 924 (1989); *O'Hare* v. *Global Natural Resources, Inc.*, 898 F. 2d 1015, 1017 (CA5 1990), while others had relied solely on common-law contract principles, see *Runyan* v. *National Cash Register Corp.*, 787 F. 2d 1039, 1044, n. 10, 1045 (CA6) (en banc), cert. denied, 479 U. S. 850 (1986); *Lancaster* v. *Buerkle Buick Honda Co.*, 809 F. 2d 539, 541 (CA8), cert. denied, 482 U. S. 928 (1987). In enacting the OWBPA, Congress adopted neither approach, instead setting certain minimum requirements that every release of ADEA rights and claims must meet in order to be deemed knowing and voluntary. I therefore agree with the Court that the OWBPA abrogates the common-law definition of a "knowing and voluntary" waiver where ADEA claims are involved.

From this rather unremarkable proposition, however, the Court leaps to the conclusion that the OWBPA supplants the common-law doctrines of ratification and tender back. The doctrine of ratification (also known in contract law as affirmation) provides that a party, after discovering a defect in the original release, can make binding that otherwise voidable release either explicitly or by failing timely to return the consideration received. See 1 Restatement (Second) of Contracts § 7, Comments *d, e* (1979); 1 E. Farnsworth, Contracts §§ 4.15, 4.19 (1990).[1] The tender back doctrine re-

---

[1] For the reasons noted by JUSTICE BREYER, see *ante*, at 431–432, I think it cannot be doubted that releases that fail to meet the OWBPA's requirements are merely voidable, rather than void.

quires, as a condition precedent to suit, that a plaintiff return the consideration received in exchange for a release, on the theory that it is inconsistent to bring suit against the defendant while at the same time retaining the consideration received in exchange for a promise *not* to bring such a suit. See *Buffum* v. *Peter Barceloux Co.*, 289 U. S. 227, 234 (1933) (citing state cases).

The OWBPA simply does not speak to ratification. It is certainly not the case—notwithstanding the Court's statement that the OWBPA "governs the effect under federal law of waivers or releases on ADEA claims," *ante*, at 427—that ratification can *never* apply in the context of ADEA releases. There is no reason to think that releases voidable on non-statutory grounds such as fraud, duress, or mistake cannot be ratified: The OWBPA merely imposes requirements for knowing and voluntary waivers and is silent regarding fraud, duress, and mistake. Further, the statute makes no mention of whether there can ever be a valid ratification in the more specific instance, presented by this case, of a release of ADEA claims that fails to satisfy the statute's requirements. Instead, the statute merely establishes prerequisites that must be met for a release to be considered knowing and voluntary; the imposition of these statutory requirements says absolutely nothing about whether a release that fails to meet these prerequisites can ever be ratified.

Not only does the text of the OWBPA make no mention of ratification, but it also cannot be said that the doctrine is inconsistent with the statute. The majority appears to reason that ratification cannot apply in the ADEA context because releases would be given legal effect where they should have none. As the Court explains, "the release can have no effect on [the employee's] ADEA claim unless it complies with the OWBPA." *Ibid.* Or, put another way, because petitioner's release did not comply with the statute, "it is unenforceable against her insofar as it purports to waive or release her ADEA claim." *Ante*, at 428.

The Court's concerns, however, appear directed at ratification itself, rather than at its application in the ADEA context. Ratification *necessarily* applies where a release is unenforceable against one party at its adoption because of some deficiency; the whole point of ratification is to give legal effect to an otherwise voidable release. By defining the requirements that must be met for a release of ADEA claims to be considered knowing and voluntary, the OWBPA merely establishes one of the ways in which a release may be unenforceable at its adoption. The OWBPA does not suggest any reason why a noncomplying release cannot be made binding, despite the original defect, in the same manner as any other voidable release.

Nor does ratification conflict with the purpose of the OWBPA. Ratification occurs only when the employee realizes that the release does not comply with the OWBPA and nevertheless assents to be bound. See 12 W. Jaeger, Williston on Contracts § 1527 (3d ed. 1970) (ratification may occur only after defect is discovered); 3 Restatement (Second) of Contracts § 381 (same). This is surely consistent with the statutory purpose of ensuring that waivers of ADEA claims are knowing and voluntary.[2]

The question remains whether the OWBPA imposes requirements that a ratification must meet. Ratification of a voidable release, like the release itself, must be knowing and voluntary. Otherwise, it too is voidable by the innocent party. See 1 *id.*, § 85, Comment *b.* Although the Court does not expressly address this question, it appears that the Court's holding requires, at minimum, that the statutory requirements apply in the ratification context.

The OWBPA does not, however, clearly displace the common-law definition of "knowing and voluntary" in the

---

[2] Although the Court, relying on the statute's title, defines the OWBPA's purpose broadly as "protect[ing] the rights and benefits of older workers," *ante*, at 427, the statute itself suggests only the more specific purpose of preventing unknowing or involuntary waivers of ADEA rights and claims.

ratification context. The statute itself states that it applies to waivers and is absolutely silent regarding ratification or affirmation. Further, several of the statutory requirements cannot be translated easily into the ratification context. The requirements that an employee be given a period of at least 21 days to consider the agreement, 29 U. S. C. § 626(f)(1)(F)(i), and that he have a 7-day period in which to revoke the agreement, § 626(f)(1)(G), naturally apply in the context of the original release, but seem superfluous when applied to ratification. For example, when an employee has implicitly ratified the original release by retaining the consideration for several months after discovering its defects, a 21-day waiting period to consider the agreement and a 7-day revocation period have no place. An employee thus may ratify a release that fails to comply with the OWBPA.

For many of the same reasons that the OWBPA does not abrogate the doctrine of ratification, it also does not abrogate the tender back requirement. Certainly the statute does not supplant the tender back requirement in its entirety. Where a release complies with the statute but is voidable on other grounds (such as fraud), the OWBPA does not relieve an employee of the obligation to return the consideration received before suing his employer; the OWBPA does not even arguably address such a situation. And in the more specific context of a release that fails to comply with the OWBPA, the statute simply says nothing about whether there can ever be an obligation to tender back the consideration before filing suit.

Nor is the tender back requirement inconsistent with the OWBPA. Although it does create an additional obligation that would not exist but for the noncomplying release, the doctrine merely puts the employee to a choice between avoiding the release and retaining the benefit of his bargain. After all, this doctrine does not preclude suit but merely acts as a condition precedent to it; the employee need only return the consideration before the statute of limitations period has

run. And despite the Court's concern that "[i]n many instances a discharged employee likely will have spent the moneys received and will lack the means to tender their return," *ante*, at 427; see also *ante*, at 431 (BREYER, J., concurring),[3] courts have interpreted the tender back doctrine flexibly, such that immediate tender is not always required. See D. Dobbs, Law of Remedies § 9.4, p. 622 (1973); *Fleming v. United States Postal Service AMF O'Hare*, 27 F. 3d 259, 260 (CA7 1994). If anything, the Court's holding creates a windfall for an employee who may now retain the consideration received from his employer while at the same time filing suit.

Finally, it is clear that the statutory requirements have no application to the tender back requirement. The tender back doctrine operates not to make the voidable release binding, as does ratification, but rather precludes a party from simultaneously retaining the benefits of the release and suing to vindicate released claims. See *supra*, at 436–437. That is, the requirement to tender back is simply a condition precedent to suit; it has nothing to do with whether a waiver was knowing and voluntary. Nothing in the statute even arguably implies that the statutory requirements must be met before this obligation arises.

In sum, the OWBPA does not clearly and explicitly abrogate the doctrines of ratification and tender back. Congress, of course, is free to do so. But until it does, these common-law doctrines should apply to releases of ADEA claims, just as they do to other releases. Because the Court of Appeals determined that petitioner had indeed ratified her

---

[3] The statements of the majority in this regard, like much of the majority opinion generally, imply that noncomplying releases are void as against public policy, rather than voidable. That certainly is not the case. See n. 1, *supra*. And JUSTICE BREYER does not explain why his alternative—permitting the employer to seek restitution—survives the OWBPA while the tender back requirement does not. See *ante*, at 433.

release, and there is no reason to think that this determination was in error, I would affirm. I therefore respectfully dissent.